No. 99-137

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 191

300 Mont. 427

8 P.3d 773

---

CANDICE VICTORIA EVERT,

Plaintiff and Appellant,

v.

CRAIG D. SWICK,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Kim Schulke, Linnell, Newhall, Martin & Schulke, P.C.,

Great Falls, Montana

For Respondent:

Lynda S. White, Sedivy, White & White, P.C., Bozeman, Montana

---

Submitted on Briefs: February 10, 2000

Decided: July 18, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶The Plaintiff, Candice Victoria Evert, brought this action in the District Court for the Tenth Judicial District in Fergus County to recover damages from the Defendant, Craig Swick, based on allegations of sexual abuse and violation of the Violence Against Women Act, 42 U.S.C. § 13981. Following a trial by jury, the jury returned a verdict in favor of Swick. Evert appeals based on the District Court's exclusion of evidence that Swick also touched her sister inappropriately. We affirm the judgment of the District Court.

2. ¶The sole issue presented on appeal is whether the District Court abused its discretion when it excluded Cheri Barfield's testimony that Swick had inappropriate sexual contact with her.

## FACTUAL BACKGROUND

1. ¶The Plaintiff, Candice Evert, was born on December 6, 1965, in California. Evert had two older sisters, Cheri Barfield and Lisa Mullen. Evert lived with her mother, Faye Barfield, in California until 1976. Prior to 1976, Evert had become familiar with the Defendant, Craig Swick, who was a family friend. Following Faye's divorce, Faye and Swick dated for a period of time while Swick lived in California. However, Swick ultimately moved to Sidney, Montana, and accepted a position working for the Montana Department of Livestock.

2. ¶During the summer of 1976, Swick returned to California for vacation and, at the end of his trip, visited Faye and her three daughters. Faye asked Swick to take her girls to Montana for a couple of weeks for a vacation. Swick agreed and Swick and the three girls traveled to Montana. According to Swick, Faye promised that she would send return plane tickets for the girls in two weeks, however, Faye did not send the tickets and the girls were unable to contact Faye for several weeks. After making contact with Faye on the telephone, Evert's two sisters returned to California. Evert remained with Swick in Montana.

3. ¶Swick and Evert moved to Lewistown, Montana in the fall of 1976. Evert attended the public elementary school and they lived in a house in town. Approximately six months later, Faye contacted Swick and requested that he allow Evert's sister, Barfield, to return to Montana to live with Swick and Evert. Swick agreed and subsequently became Evert's and Barfield's legal guardian in 1978. Barfield lived with Swick for a short period before being placed in foster care.

4. ¶In 1979, Evert began to get into trouble at school and with the law. John Foster, a youth probation officer, became involved with Evert and Swick. During the next couple of years, Evert was placed in foster care for a short period of time, spent time

at the Mountain View School for girls, and attended several drug and alcohol treatment programs.

5. ¶In 1985, Evert married her first husband, John DeNeeve. Evert and DeNeeve had a daughter who has lived with DeNeeve since the couple's divorce in 1990. Evert subsequently married her current husband, Warren Evert, in 1994. Following personal problems in late 1995, Evert sought help and began counseling with Dr. Anne Pincus in February of 1996. At the time of trial she was being treated by Dr. Cindy Miller.

6. ¶On April 16, 1997, Evert filed a complaint against Swick, in which she alleged that Swick had sexually abused her as a child. Evert alleged that during the years she had resided with Swick, between the ages of 10 and 15 years, Swick had sexually abused her on numerous occasions. On January 28, 1998, Evert filed an amended complaint in which she added the allegation that Swick had committed a crime of violence motivated by gender in violation of 42 U.S.C. § 13981.

7. ¶On December 22, 1998, Swick filed a motion in limine asking that the District Court exclude any testimony by Cheri Barfield that she had been abused by Swick. Following a hearing to consider the parties' several motions in limine on January 4, 1999, the District Court granted Swick's motion to exclude all portions of Barfield's testimony which related to her alleged abuse by Swick.

8. ¶Following a jury trial on January 11 through 16, 1999, the jury found in favor of the Defendant, Swick. Evert appeals the District Court's order excluding the portion of Barfield's testimony which dealt with alleged abuse by Swick towards Barfield.

## STANDARD OF REVIEW

1. ¶The standard of review for evidentiary rulings is whether the district court abused its discretion. *See State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. We have recently stated:

Trial courts are vested with broad discretion to determine whether evidence is relevant and admissible and this court will not overturn an evidentiary determination in the absence of an abuse of discretion. *See State v. Link*, 1999 MT 4, ¶ 20, 974 P.2d 1124, ¶ 20. The fact that discretion is permitted, infers that there may be more than one permissible way to resolve an evidentiary issue and that the District Court is in the best position to make that decision. In other words, there is not a purely correct or incorrect answer to every evidentiary issue. This is particularly true regarding evidence of prior acts.

*Benjamin v. Torgerson, 1999 MT 216, ¶ 15, 295 Mont. 528, ¶ 15, 985 P.2d 734, ¶ 15.*


## DISCUSSION

1. ¶Did the District Court abuse its discretion when it excluded Cheri Barfield's testimony that Swick had inappropriate sexual contact with her?
2. ¶Evert contends that the District Court abused its discretion by excluding the proffered testimony of her sister, Cheri Barfield, in which she alleged that she had been sexually and physically abused by Swick. Evert asserts that the testimony was admissible pursuant to Rule 404(b), M.R.Evid., to show opportunity, identity or absence of mistake, that the testimony was part of the res gestae, and that the testimony was admissible as rebuttal testimony. Evert asserts that the probative value of Barfield's testimony, therefore, outweighed the prejudicial effect of the testimony.


1. ¶Evert made the following offer of proof regarding Barfield's trial testimony:

Q. During the time you lived with Craig Swick, did he ever touch the private areas of your body?

A. Yes.

Q. What did he touch?

A. He would pretend to try to tickle me and would touch my breasts and between my legs.

Q. On how many occasions?

A. A couple of times.

Q. What was your response?

A. I told him to stop.

Q. What was his response?

A. He quit that, but then started beating me.

Q. Did he beat you more than once?

A. Yes, many times.

Q. Did you have bruises from those beatings?

A. Yes.

. . . .

Q. Did you report the physical abuse to anyone else?

A. Yes, I finally reported it to John Foster.

1. ¶At the hearing to consider Swick's motion to exclude portions of Barfield's testimony, the District Court explained its reasoning as follows:

This is one of those issues I believe falls under the probative value outweighed by the prejudicial effect . . . . I think that would be tantamount to directing the verdict to-to the Plaintiff, and I realize that if in fact this did happen that, you know, that that's very powerful evidence for-for the Plaintiff that the Defendant perhaps committed the sexual abuse, but, you know, I-looking under the character evidence rules as well as the 404 rules I-I would have a real difficult time based upon the fourth step of the . . . *Just* and the *Matt* notices, that the-probative value of the other act must not be outweighed by the danger of unfair prejudice, and I-I-I just think it would.

1. ¶However, the District Court did allow Barfield to testify to observations of Swick's conduct with Evert. At trial, Barfield gave the following testimony:

Q. During the time that you lived in Lewistown did you observe the Defendant touch

Candice?

A. Yes.

Q. Did that happen frequently?

A. Yes.

Q. And where would he touch her?

A. In inappropriate places.

Q. And what do you mean by that?

A. Near her breast area and between her legs.

1. ¶Rule 404(b), M.R. Evid., provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

1. ¶First, Evert contends that the excluded portion of Barfield's testimony was admissible pursuant to Rule 404(b), M.R.Evid., to prove the following:

Cheri's testimony is admissible to prove the identity of the person who abused Candice. Further, if Swick had the opportunity to assault Cheri, he also had the opportunity to assault Candice. Finally, the fact that Swick also abused Cheri shows an absence of mistake on the part of Candice as to who was assaulting her and the abuse to which she was subjected.

1. ¶We have previously developed four criteria, referred to as the Modified *Just* Rule, to be used in determining the admissibility of such evidence:

(1) The other crimes, wrongs or acts must be similar.

(2) The other crimes, wrongs or acts must not be remote in time.

(3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

*State v. Matt (1991), 249 Mont. 136, 142, 814 P.2d 52, 56.*

1. ¶Our review of the record discloses no issue about identity, opportunity, or mistake. Swick clearly had the opportunity to abuse Evert. She lived with him. His defense was not that she was mistaken about the identity of her assailant. It was that she was not telling the truth. The only issue was the credibility of the Plaintiff and the Defendant. The evidence was offered to impugn Swick's credibility and bolster Evert's by proof of Swick's character. However, Rule 404(b), M.R.Evid. does not permit evidence of prior acts for that purpose.
2. ¶Evert also contends that Barfield's proffered testimony was admissible as part of the "res gestae." Recently, in *State v. Hansen*, 1999 MT 253, 296 Mont. 282, 989 P.2d 338, we clarified use of the term "res gestae", stating:

Res gestae generally refers to spontaneous declarations that are so closely connected to an occurrence that they are considered part of the occurrence. "The 'res gestae' rule is that where a remark is made spontaneously and concurrently with an affray, collision or the like, it carries with it inherently a degree of credibility and will be admissible because of its spontaneous nature." Black's, at 1305.

. . . .

Today these statement fall into four specific exceptions to the hearsay rule: (1) statements of present sense impressions, (2) excited utterances, (3) statements of present bodily condition, and (4) statements of present mental states and emotions. These four exceptions are found in Rule 803, M.R.Evid.

. . . .

The concept of res gestae has not always been associated only with spontaneous declarations.

. . . .

Such is the case in Montana where the concept of res gestae has also been associated with the "transaction rule," which provides:

Declaration, act, or omission which is a part of the transaction. Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction.

Section 26-1-103, MCA.

. . . .

The phrase res gestae, in itself, adds nothing but confusion to an already complex area of the law. The better practice is to abandon the use of the phrase altogether and to, instead, use the specific rule of evidence or statute that applies to the particular factual situation presented.

*Hansen, ¶¶ 73-81.*

1. ¶In this case, Barfield's testimony that Swick had inappropriate sexual contact with her, clearly does not fall within one of the four Rule 803, M.R.Evid. exceptions to hearsay. Nor does Barfield's testimony that she was tickled by Swick in inappropriate places a couple of times and when that stopped that she was physically abused by him, involve part of the same transaction as set forth in § 26-1-103, MCA. Therefore, the proffered testimony was not admissible pursuant to Rule 803, M.R.Evid. or § 26-1-103, MCA.

2. ¶Finally, Evert asserts that the testimony should have been allowed to impeach the testimony of John Foster or in rebuttal. Evert contends that Foster testified that "he was not made aware of any abuse on the part of Swick." Evert asserts that Barfield should have been allowed to testify that Barfield had reported to Foster that she was physically abused by Swick. However, the record reveals that Foster's testimony was limited to his contact with Evert, and he did not testify regarding his dealings with Barfield:

Q. During this entire period of time when you were dealing with Candi and in your conversation with Candi did she ever once make a report to you that Mr. Swick was sexually abusing her?

A. No.

Q. Did she ever once make a report to you that Mr. Swick was physically abusing her?

A. No.

. . . .

Q. During this entire period of time did you ever concern yourself or feel concerned that Candi was being physically abused, sexually abused, or battered while in the presence or living with Mr. Swick?

A. No.

Foster did not testify that Barfield did not report physical abuse to him. Foster testified that Evert did not report abuse to him. Therefore, Barfield's testimony would not have impeached Foster. Nor is it clear from our review of the record that it had any other rebuttal value which would have outweighed its prejudicial effect.

1. ¶The District Court noted the danger of unfair prejudice which would be produced by allowing Barfield to testify that she too had been sexually and physically abused by Swick. In denying Evert's second request to allow Barfield to testify following Evert's offer of proof, the District Court stated the following:

I think the most telling statement was in the Plaintiff's brief where she states, "The fact that Swick sexually abused Candice's sister in addition to Candice during the same time period while living in the same household certainly tends to support Candice's claim that he sexually abused her." To me that is exactly what we try to get away from under 404(b).

1. ¶For these reasons, we conclude that the District Court properly limited Barfield's testimony to the allegations contained in Evert's complaint and excluded the portion of Barfield's testimony about other acts.
2. ¶The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART