No. 01-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 128N

IN RE THE MARRIAGE OF

RANDALL E. MAGILL,

      Petitioner/Counter Respondent and Appellant,

  and

JARI L. MAGILL,

      Respondent/Counter Petitioner and Respondent.

APPEAL FROM:    District Court of the First Judicial District,
                    In and for the County of Lewis and Clark,
                    The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Charles A. Smith, Attorney at Law, Helena, Montana

      For Respondent:

            Timothy J. McKittrick, Attorney at Law, Great Falls, Montana

Submitted on Briefs: November 8, 2001

Decided:    June 13, 2002

Filed:

_____
                        Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     Randall E. Magill (Randy) appeals from the Findings of Fact, Conclusions of Law and Decree of Dissolution of the District Court for the First Judicial District in Lewis & Clark County dissolving the marriage of Randy and Jari L. Magill, equitably dividing the marital estate, adopting a parenting plan for their two minor children, and adopting appropriate child support and medical support provisions.  We affirm in part, reverse in part, and remand.

¶3   The following issues are presented on appeal:

¶4   1.  Did the District Court err when it excluded the testimony and market analysis of a realtor who valued the house Randy acquired prior to the marriage?

¶5   2.  Did the District Court err when it awarded Jari one-half of the equity in the house Randy acquired prior to the marriage?

¶6   3.  Did the District Court err when it ordered Randy to pay child support to Jari?

¶7   4.  Did the District Court err when it rescinded the *ex parte* order which amended the original parenting plan?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 Randy and Jari Magill married on March 20, 1994, and separated in June of 2000. The parties have two daughters whose ages are seven and three years.

¶9 Four months prior to getting married, Randy purchased a house located at 1404 Madison Avenue in Helena, Montana, for $51,000. The parties lived in that house from the time it was purchased until their separation. On his Income and Expense Disclosure Statement filed with the District Court, Randy stated that the current value of the house was $85,000, however, the house was encumbered by a mortgage in the amount of $70,000. During the time the parties lived together and were married, only minor improvements were made to the house, most notably painting and wallpapering the bathroom. From the time of the birth of their first child in 1994, Jari was a homemaker and cared for the parties' children while Randy worked outside the home at Allen's Super Store. After the parties separated, Jari obtained part-time, nighttime employment at UPS. Her evening job enabled her to avoid daycare expenses and spend time with the children. It also provided health insurance for the children.

¶10 In July 2000, Randy petitioned the District Court to dissolve their marriage, to adopt a proposed parenting plan, to equitably distribute the marital estate, to order Jari to pay child support, to award neither party maintenance, and to award both children as his dependents for state and federal tax purposes. Jari counter-petitioned that Randy should be ordered to pay child support and

3

maintenance, and that each parent should be permitted to claim one of the two children for tax purposes.

¶11 Following a hearing on January 4, 2001, the District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution on February 8, 2001. The Court dissolved the marriage and adopted the parenting plan agreed upon by the parties. Furthermore, the Court ordered Randy to pay Jari $259 per month for child support and awarded Jari one-half of the equity in the house acquired by Randy prior to the marriage. No maintenance was awarded. Randy filed a Notice of Appeal of the District Court's judgment on February 14, 2001.

¶12 After filing his appeal, Randy filed an *ex parte* motion to amend the parenting plan pursuant to § 40-4-202(2)(a)(ii), MCA. On April 4, 2001, the District Court issued an order amending the parenting plan adopted in the February 8, 2001, Decree, and made Randy the primary custodian and residential care provider for the two children until a show cause hearing could be held on April 30, 2001. Jari filed a motion to vacate the order on April 25, 2001, based on her contention that Randy's Notice of Appeal divested the District Court of jurisdiction to amend the judgment. Apparently agreeing with Jari, the District Court telephoned both counsel of record and rescinded its April 4, 2001, Order. The parties have since followed the parenting plan set forth in the February 8, 2001, Decree.

**DISCUSSION**

**ISSUE 1**

4

¶13    Did the District Court err when it excluded the testimony and market analysis of a realtor who valued the house Randy acquired prior to the marriage?

¶14    Two weeks prior to the hearing, Randy amended his witness and exhibit list to include Parker Heller, a Helena realtor, and a market analysis using recent comparable sales to arrive at a market value for the home Randy acquired prior to the marriage.  Jari filed a Motion in Limine to exclude Heller and his exhibit, arguing that the value that Randy included in his Income and Expense Disclosure Statement could not be amended.  The District Court agreed and refused to allow Heller to testify.  In Heller's opinion, the actual market value of the house was between $67,000 and $72,500.  In his disclosure statement, Randy indicated that the value was $85,000.

¶15    The standard of review for evidentiary rulings is whether the district court abused its discretion.  *Evert v. Swick*, 2000 MT 191, ¶ 11, 300 Mont. 427, ¶ 11, 8 P.3d 773, ¶ 11. The district court has broad discretion to determine whether or not evidence is relevant and admissible, and absent a showing of an abuse of discretion, the trial court's determination will not be overturned.  *State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263; *State v. Crist* (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054.

¶16    Here, Randy represented in his Income and Expense Disclosure Statement filed with the District Court that the house located at 1404 Madison Avenue was worth $85,000.  Immediately preceding the signature line, the Income and Expense Disclosure Statement included the following language:

5

> THIS STATEMENT IS A FULL DISCLOSURE OF ALL ASSETS AND LIABILITIES AS REQUIRED BY LAW. FAILURE TO PROVIDE A COMPLETE DISCLOSURE MAY CONSTITUTE PERJURY. I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING, INCLUDING ANY SCHEDULES OR ATTACHMENTS, IS TRUE, CORRECT, AND COMPLETE.

The Income and Expense Disclosure Statement was signed by Randy, and notarized by his attorney. Jari did not contest Randy's $85,000 valuation of the house.

¶17 Randy's purpose for adding Heller as a witness and including his exhibit was to repudiate the value he had previously assigned to the house – a value on which Jari relied in her preparation for the hearing. However, it was Randy's obligation to correctly value the house before filing his Income and Expense Disclosure Statement. We conclude that the District Court did not abuse its discretion when it granted Jari's Motion in Limine.

## ISSUE 2

¶18 Did the District Court err when it awarded Jari one-half of the equity in the house Randy acquired prior to the marriage?

¶19 Randy contends that the home he purchased four months prior to his marriage with Jari should not have been included in the marital estate. The District Court included the home in the marital estate. Because the present value of the house was $85,000, and the outstanding debt on the house was $70,000, the District Court ordered Randy to pay Jari one-half of the equity in the house, or $7,500.

¶20 We review a district court's division of marital property to determine whether the findings on which it relied are clearly

6

erroneous. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. If the findings are not clearly erroneous, we will affirm the division of property unless the district court abused its discretion. *Engen*, ¶ 26. The test for abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Meeks* (1996), 276 Mont. 237, 242, 915 P.2d 831, 834 (citation omitted). The court is free to adopt any reasonable valuation of marital property which is supported by the record. *Meeks*, 276 Mont. at 242-43, 915 P.2d at 835.

¶21 Section 40-4-202, MCA, controls the division of property as part of a marriage dissolution, and provides in relevant part as follows:

> (1) In a proceeding for dissolution of marriage . . . the court . . . shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . *In dividing property acquired prior to marriage* . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of the property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements. [Emphasis added.]

¶22 We have construed § 40-4-202, MCA, to mean that pre-acquired property should not be included in the marital estate unless the non-acquiring spouse contributed to its appreciation or preservation. *Engen*, ¶ 29. In that event, the non-acquiring

7

spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts. *See Engen*, ¶ 29; *Stoneman v. Drollinger*, 2000 MT 274, ¶ 18, 302 Mont. 107, ¶ 18, 14 P.3d 12, ¶ 18; *In re Marriage of Smith* (1995), 270 Mont. 263, 268-69, 891 P.2d 522, 525; *Bradshaw v. Bradshaw* (1995), 270 Mont. 222, 230, 891 P.2d 506, 511; *In re Marriage of Smith* (1994), 264 Mont. 306, 312, 871 P.2d 884, 888. Therefore, for Jari to claim an interest in the home, she must prove that the property value had appreciated or been preserved during the marriage and that she somehow contributed to that appreciation or preservation in value.

¶23 Here, the reason for the house's appreciation and what role, if any, Jari played is unclear from the record. Randy and Jari lived together in the house from the date it was purchased in November 1993 until the couple separated in June of 2000. Randy and Jari worked together to paint and wallpaper the bathroom but otherwise did little to improve the house. Jari testified that she performed the duties of a homemaker and mother, such as cleaning, cooking, doing laundry, and caring for the children. Randy asserts that the increase in value from 1993 to the present is due to market factors alone and not to any contributions made by Jari.

¶24 The District Court awarded Jari one-half of the appreciated value of the home, or $7,500, and found that "since both parties contributed to the mortgage payments on it during the marriage and to improvements on the house," the house should be included in the marital estate. However, there is no evidence that Jari

8

contributed to the mortgage payments. Furthermore, the improvements to the home were not of a magnitude sufficient to account for a $15,000 increase in property value. Therefore, we conclude that the District Court abused its discretion when it awarded Jari one-half of the equity in the house and reverse that part of the District Court's Decree. We remand to the District Court for a determination of an equitable share of the appreciated value of the house which is attributable to Jari's efforts and consistent with the factors set forth in § 40-4-202(1), MCA.

¶25　Did the District Court err when it ordered Randy to pay child support to Jari?

¶26　The standard of review of a district court's award of child support is whether the district court abused its discretion. *In re Marriage of Craib* (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384. However, "a district court must apply its discretion in a realistic manner, taking into account the actual situation of the parties." *In re Marriage of Noel* (1994), 265 Mont. 249, 252, 875 P.2d 358, 359. We conclude that the District Court did not abuse its discretion.

¶27　The District Court found that the children are cared for by Jari for 182.5 days during each year and by Randy for 182.5 days. The Court ordered Randy to pay Jari $259 per month for child support. The Court considered Randy's gross income of $33,724 and Jari's gross income of $11,243, and found that for purposes of child support, the parties share custody of the children equally "based on the actual hours the children spend with each parent and the number of meals each parent provides to the children."

¶28　Randy contends that the District Court abused its discretion. Based on the parenting plan agreed to by the parties, Randy asserts that he cares for the children for the majority of a 24-hour period for five days a week, or at least 260 days a year. He contends that Jari cares for the children only 52 days per year, or one out of every seven days during the week. The parenting plan provides as follows:

10

1. Jari has the children from 8:45 a.m. to 6:15 p.m., and Randy has the children from 6:15 p.m. to 8:45 a.m. on Monday, Thursday, and Friday.
2. Randy has the children from Tuesday at 6:30 p.m. until 8:30 a.m. on Thursday.
3. Jari has the children from 8:30 a.m. on Saturday until noon on Sunday.
4. Randy has the children from noon on Sunday until 8:30 a.m. on Monday.

¶29 Paragraph 25 of the Montana Child Support Guidelines indicates that a parent who cares for their children 110 days or less has an obligation to pay support to the other parent. Therefore, Randy contends that Jari should be paying him monthly child support, and that he owes none.

¶30 However, for practical purposes, the parents do share custody of the children equally. The children are exchanged on a daily basis with the exception of Wednesday, and to strictly apply the child support guidelines because the children spend five more hours a day with Randy during the middle of the night would create an unjust result. While we agree that Randy cares for the children during the night while they sleep, the District Court's determination that custody is shared equally was not an abuse of discretion. The District Court took into account the actual situation of the parties, and on that basis ordered Randy to pay child support. We conclude that the District Court did not err in doing so.

**ISSUE 4**

¶31 Did the District Court properly rescind the *ex parte* order which amended the original parenting plan?

11

¶32   After the Notice of Appeal was filed, Randy filed a motion to amend the parenting plan pursuant to § 40-4-220(2)(a)(ii), MCA, based on facts and matters which occurred after the entry of the Decree.   On April 4, 2001, the District Court issued an *ex parte* order which amended the parenting plan and designated Randy as the primary custodian and residential care provider until a hearing could be held on April 30, 2001.   Jari filed a motion to vacate the order, and claimed the District Court lost jurisdiction when Randy filed his Notice of Appeal.   The District Court then contacted counsel for both parties by telephone and verbally rescinded the order.   Following the rescission, the parties have operated pursuant to the original parenting plan.

¶33   It is well established in Montana that the district court's jurisdiction in matters of child custody is of a continuing nature. *Foss v. Leifer* (1976), 170 Mont. 97, 100, 550 P.2d 1309, 1311; *Libra v. Libra* (1969), 154 Mont. 222, 229, 462 P.2d 178, 181; *Barbour v. Barbour* (1958), 134 Mont. 317, 320, 330 P.2d 1093, 1095. Jurisdictional questions emphasize first and foremost a determination consistent with and supportive of the best interests of the child.   *In re Marriage of Skillen*, 1998 MT 43, ¶ 21, 287 Mont. 399, ¶ 21, 956 P.2d 1, ¶ 21.

¶34   A party may seek an *ex parte* order amending a parenting plan, even though a previous parenting plan has been adopted, if "an emergency situation has arisen in the child's present environment that endangers the child's physical, mental, or emotional health

12

and an immediate change in the parenting plan is necessary to protect the child." § 40-4-220(2)(a)(ii), MCA.

¶35 Here, the District Court amended the original parenting plan and ordered Jari to show cause, at a hearing on April 30, 2001, why Randy should not be awarded primary custody of the children. Because Randy had met all relevant statutory criteria to seek temporary custody pursuant to § 40-4-220, MCA, the District Court had jurisdiction to issue such an order.

¶36 However, on April 27, 2001, the District Court rescinded its order during telephone calls with the parties' counsel. The precise reason for the District Court's action is not reflected by any subsequent order in the District Court file. However, Jari's counsel states in a memo included as an appendix to Randy's brief that the District Court indicated in its phone call that it lacked jurisdiction to issue the order. With no reason to believe otherwise, we will proceed on the assumption that the District Court rescinded the order on that basis. If so, the District Court's rescission of the *ex parte* order was in error.

¶37 However, the practical effect of our determination is minimal. By the time the District Court learns of our decision that it always had jurisdiction, this case will have been clearly returned to the District Court for the complete exercise of its jurisdiction. Whether there is cause to amend the parenting plan will depend on the circumstances at that time. Therefore, since the District Court's *ex parte* order was interim and could not have been made final until a hearing was held at which both parties were

13

represented, and a hearing will still be necessary if Randy pursues modification following remand, we conclude that it is in the children's best interests to maintain the status quo until that hearing can be held.

¶38 Therefore, this case is remanded to the District Court for further considerations required by this Opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART