## IN THE COURT OF APPEALS OF IOWA

No. 13-1306
Filed September 17, 2014

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**BRETT GRAHAM,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Steven J. Oeth, Judge.

A defendant appeals his conviction for second-degree arson. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, and Dan Kolacia, County Attorney, for appellee.

Considered by Vaitheswaran, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**VAITHESWARAN, P.J.**

Brett Graham confessed to taking a lighter to a barn in Boone County. The resulting fire destroyed the barn and its contents.

The State charged Graham with second-degree arson, and a jury found him guilty as charged. On appeal, Graham contends (I) the district court abused its discretion in admitting prior bad acts evidence and (II) his trial attorney was ineffective in failing to request a uniform jury instruction on the treatment of the prior bad acts evidence in lieu of the instruction that was given.

## I.    *Prior Bad Acts Evidence*

A key issue at trial was the admission of evidence of prior crimes allegedly committed by Graham. Specifically, police learned that Graham may have set three fires in Story County before setting the fire in Boone County. They questioned Graham about these fires and sought to admit recordings of the interviews in his Boone County trial.

Graham filed a motion in limine seeking to exclude the recordings. He contended the evidence served a single impermissible purpose: to show he had the propensity to light fires and acted in conformity with this propensity in setting the Boone County fire. The State countered that the evidence would address a fighting issue in the case—whether Graham intended to damage or destroy the Boone County barn.

The district court excluded evidence of two of the Story County fires but admitted evidence of a fire at a Story County golf center eight days prior to the Boone County fire. In admitting this evidence, the court reasoned as follows:

> [T]he court finds that the evidence is relevant. The issue of specific intent is really the fighting issue in this case, especially given the allegations of the defendant's conduct relative to trying to put out the Boone County barn fire by urinating on the smoldering hay. The court also finds that it is similar in kind and time to the conduct in Boone County. Specifically, there was a lighter involved to a building. In the Boone County case there was a lighter to hay in a building. And the conduct is alleged to have been close in time, a week or eight days before. Finally, the court finds there is sufficient evidence at least allegedly in—based on the minutes of testimony to support that the defendant committed the Story County conduct based on his alleged admissions. And finally, the court finds that the probative value, again given what I perceive to be the fighting issue in this case relative to the specific intent and again considering defendant's conduct on urinating on the smoldering hay, I find that based on that the probative value substantially outweighs the danger of unfair prejudice.

Our review of this ruling is for an abuse of discretion. *State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014).

The admission of prior bad acts evidence is governed by Iowa Rule of Evidence 5.404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule "exclude[s] evidence that serves no purposes except to show that the defendant is a bad person, from which the jury is likely to infer he or she committed the crime in question." *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001).

To be admissible, prior bad acts evidence must be (1) relevant to a legitimate, disputed factual issue, such as identity, intent, or motive; (2) supported by clear proof the individual against whom the evidence is offered

committed the bad act or crime; and (3) substantially more probative than prejudicial. *Putman*, 848 N.W.2d at 9-10.

We begin and end with the relevancy requirement. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401; *Putman*, 848 N.W.2d at 9. According to the Advisory Committee's note to the comparable federal rule, "[t]he fact to which the evidence is directed need not be in dispute." Fed. R. Evid. 401 advisory committee's note.

The jury was instructed that the State would have to prove the following elements of second-degree arson:

1. On or about the twenty-fifth day of January, 2013, the defendant caused a fire or explosion or placed burning material in or near property.
2. The defendant intended to destroy or damage the property or knew the property would probably be destroyed or damaged.
3. The property was a building, structure or personal property, the value of which exceeded five hundred dollars.

On appeal, the State reiterates that the evidence of the prior fire was relevant to establish intent, which is an exception to the prohibition on admission of prior bad acts evidence.

We agree rule 5.404(b) lists intent as an element on which prior conduct may be probative. Iowa R. Evid. 5.404(b); *Putman*, 848 N.W.2d at 10; *State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010). We also agree that, assuming a dispute is required, intent was a disputed element in this case; Graham's proposed jury instruction on the lesser included offense of "reckless use of fire" made this clear. It would seem like a small step, then, to conclude that, under

the broad definition of relevance set forth in rule 5.401, Graham's role in the Story County fire made it more probable he intended to destroy the barn in Boone County. In other words, it could be argued that the prior crime was "logically relevant" to the present crime. *See State v. Knox,* 18 N.W.2d 716, 723 (Iowa 1945) ("'Logical relevancy' may be defined as the existence of such a relationship in logic between the fact of which evidence is offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter.").

However, even if evidence is "logically relevant" under rule 5.401, the evidence may not be legally relevant under the remaining rules of evidence. *See* 12 Barry A. Lindahl, *Iowa Practice Series, Civil & Appellate Procedure* § 36:42, at 55-56 (2014 ed.). To meet the test for legal relevance under rule 5.404(b), the State was obligated to "articulate a valid, noncharacter theory of admissibility for admission of the bad-acts evidence." *State v. Sullivan*, 679 N.W.2d 19, 28 (Iowa 2004); *accord Nelson*, 791 N.W.2d at 425 (quoting *State v. Mitchell*, 633 N.W.2d 295, 298 (Iowa 2001), "The important question is whether the disputed evidence is 'relevant and material to some legitimate issue other than a general propensity to commit wrongful acts.'"); *State v. Cox*, 781 N.W.2d 757, 769 (Iowa 2010) ("We must decide whether [the evidence] could be admitted for a 'legitimate issue.'"); 7 Laurie Kratky Doré, *Iowa Practice Series, Evidence* § 5.404:6, at 225 (2011-2012 ed.) (stating that to be legally relevant, prior bad acts evidence must be "relevant to a legitimate non-character issue in the case even though such evidence may reveal character traits of the accused"). For the Story County evidence to be legally relevant, the State could not simply argue that if Graham entertained the

intent to destroy a building in the past, "he probably harbored the same intent at the time of the charged offense." *Sullivan*, 679 N.W.2d at 29. Yet, this is precisely what the State argued. The prosecutor stated:

> We can use 404B evidence to prove intent . . . . They are both unoccupied dwellings. He used a lighter in the golf center. He used a lighter at the barn. And also he drove and hid. In both instances he went back almost two days later.

The State's argument was nothing more than an assertion that Graham had the propensity to take lighters to buildings and acted on the propensity in setting the Boone County fire. As in *Sullivan*, the prosecutor offered a prior, unproven act of arson "unconnected to the charge for which [Graham] was being tried without articulating a valid, non-character theory of logical relevance to support an ultimate inference of intent." *Id.* This was impermissible.

In reaching this conclusion, we have considered several opinions cited by the State. In our view, these opinions are inapposite.

In *State v. Reynolds*, 765 N.W.2d 283, 290-91 (Iowa 2009), an appeal from a conviction for assault causing bodily injury, the court found prior threats and assaults toward the complaining witness relevant to show the defendant's "personal animus toward" the complaining witness. The court took pains to explain that the evidence "was not offered to show a *general propensity* towards violence but rather 'to demonstrate the nature of [Reynolds'] relationship and feelings toward a *specific* individual.'" *Reynolds*, 765 N.W.2d at 291.

Similarly, in *State v. Taylor*, 689 N.W.2d 116 (Iowa 2004), an appeal from convictions for domestic abuse assault causing bodily injury and first-degree

burglary arising out of Taylor's altercation with his wife, the court found the prior relationship important to determining intent.  The court stated:

> We also think there is a logical connection between a defendant's intent at the time of a crime, when the crime involves a person to whom he has an emotional attachment, and how the defendant has reacted to disappointment or anger directed at that person in the past, including acts of violence, rage, and physical control.

*Taylor*, 689 N.W.2d at 125.  The court concluded,

> The defendant's prior acts of violence toward his wife, while certainly illustrative of a propensity to use violence, also reflect his emotional relationship with his wife, which as our discussion shows, is a circumstance relevant to his motive and intent on the day in question.

*Id.* at 128.  The court distinguished this situation from cases in which the State sought to introduce evidence of unconnected prior crimes.  Accepting *Sullivan's* statement that "evidence of an unconnected prior crime is always evidence of propensity and never evidence of a specific intent to commit the crime charged," the *Taylor* court noted that "[d]omestic violence is never a single isolated incident."  *Taylor*, 689 N.W.2d at 129 n.6 (citation omitted).  The court stated, "[e]vidence of prior bad acts is especially relevant and probative in domestic violence cases because of the cyclical nature of domestic violence."  *Id.* (citation omitted); *see also Rodriquez*, 636 N.W.2d at 242 ("The fact that the defendant had cruelly assaulted Enriquez in the past when she tried to leave him makes it more probable that his mere presence in the bedroom was intended—and perceived—to be a threat of harm calculated to prevent her from leaving.  In addition, evidence of the defendant's prior intentional, violent acts towards the victim coupled with his prior threats to kill her if she left him also makes it more

probable that he intended to cause her serious injury on October 11, in contrast to his claim that the injuries he inflicted that day were merely unintended, incidental consequences of his anger."); *State v. Little*, No. 08-1125, 2010 WL 786011, at *11-12 (Iowa Ct. App. Mar. 10, 2010) (distinguishing case from those such as *Taylor* by stating "[i]f the conduct had involved the same victim . . . this would of course be a different case" and stating "intent is almost always an issue in a criminal case.  So that the 5.404(b) exception does not swallow the rule, it is important the evidence bear *directly* on intent, rather than passing through the filter of character or propensity").

In *State v. Plaster*, 424 N.W.2d 226, 230 (Iowa 1988), the court considered whether evidence of past sexual abuse of a different woman was relevant on the issue of consent.  The court stated "Plaster's prior sexual conduct toward [a different woman] tends to show the same peculiar and characteristic behavior pattern manifested in the crime charged" and "tends to rebut his consent theory of defense."  *Plaster*, 424 N.W.2d at 230.  The court ultimately held that the probative value of this evidence outweighed the danger of unfair prejudice.  *Id.* at 233.  The Iowa Supreme Court called this holding into question in *Mitchell*, 633 N.W.2d at 299.  In an appeal from a conviction for second-degree sexual abuse, the court held the district court abused its discretion in admitting testimony concerning a defendant's prior bad acts with different people.  *Mitchell*, 633 N.W.2d at 300.  The court specifically stated, "[t]he future applicability of *Plaster* in a factual situation similar to the one in that case now remains an open question."  *Id.* at 299.

In this case, the Story County fire was unconnected to the Boone County fire. The setting of the Story County fire showed nothing more than Graham's propensity to commit the Boone County fire.[1] *See Sullivan*, 679 N.W.2d at 29.

The court's recent opinion in *Putman* also does not alter our conclusion. The court there held that certain evidence of a sexual nature was relevant to establish identity. *Putman*, 848 N.W.2d at 13. The court stated the relevancy test was different in the context of proving identity, requiring a showing that the prior bad acts were "strikingly similar" or of a "unique nature." *Id.* at 11. Here the focus is on intent. The pertinent test for evaluating legal relevancy in this context was set forth in *Sullivan*. But even if the relevancy test summarized in *Putnam* were applicable to prior bad acts offered to prove intent, we are not persuaded that the use of lighters to start fires rendered the prior bad act "strikingly similar" or of a "unique nature." *See Putman*, 848 N.W.2d at 12 ("[W]e have held generally similar prior-bad-acts evidence inadmissible.").

Finally, the closeness in time of the Story County fire did not enhance the probative value of the evidence because "temporal separation" of the prior bad act goes to the weight of the evidence rather than its admissibility. *See Sullivan*, 679 N.W.2d at 29 (noting three-year time span between past and present act "cast[] doubt on the weight of th[e] evidence").

---

[1] Although the State introduced Graham's statement to police in which Graham indicated he started fires to gain the attention of his father, an assistant fire chief, the State does not now argue that the prior bad acts evidence was admissible to establish the alternative non-propensity purposes of motive or plan.

In sum, we conclude the evidence of the Story County fire was not legally relevant, and accordingly, the evidence was inadmissible. *See* Iowa R. Evid. 5.402.

This brings us to the question of whether the district court's admission of the evidence was harmless. On this question, we presume prejudice and reverse unless the record affirmatively establishes otherwise. *Sullivan*, 679 N.W.2d at 30.

The record affirmatively establishes otherwise. The owner of the barn testified she previously employed Graham in cutting and stacking hay. Graham told police that several checks he received in payment for the work bounced. On the night of the fire, he was angry about the bounced checks. Early in the morning, he pulled into the barn, knowing the door would be open and the hay would be highly combustible. He pulled out his lighter and held it to the hay. He was surprised when the hay did not instantly ignite because he knew "how dry that hay was when [he] put it in there." He said if he "would have lit a cigarette, it would have . . . [w]oof." Because the hay did not immediately ignite he "just . . . held [the lighter] there." The hay still did not ignite, and at this point, Graham experienced a touch of remorse, urinated on the hay in an effort to keep the smoldering fire from bursting into flames, and left.

Notwithstanding Graham's belated pang of conscience, this evidence overwhelmingly establishes that he "intended to destroy or damage the property or knew the property would probably be destroyed or damaged." Accordingly, any error in admitting the evidence of the Story County fire was harmless.

## II.     *Ineffective Assistance of Counsel Claim*

Graham contends his trial attorney was ineffective in failing to seek a uniform jury instruction on prior bad acts evidence which, unlike the instruction that was given, requires establishment of the prior bad acts by "clear proof."  To succeed, Graham must show counsel breached an essential duty, and prejudice resulted.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Ordinarily, ineffective-assistance-of-counsel claims are best preserved for postconviction-relief proceedings, where the record of trial counsel's motivations can be more completely developed.  *State v. Bumpus*, 459 N.W.2d 619, 627 (Iowa 1990).  Here, we find the record adequate to address the issue.

As discussed, the evidence of Graham's guilt was overwhelming. Accordingly, there is no reasonable probability of a different outcome had Graham's attorney requested the uniform jury instruction.  *See State v. Davis*, 584 N.W.2d 913, 919 (Iowa Ct. App. 1998) ("Davis cannot prove he was prejudiced" by his attorney's failure to propose a more detailed instruction because "[t]he evidence was so overwhelming"); *see also State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008) ("When the submission of a superfluous jury instruction does not give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred, in the context of an ineffective-assistance-of-counsel claim, no prejudice results.").  Graham's ineffective-assistance-of-counsel claim fails on the prejudice prong.

We affirm Graham's judgment and sentence for second-degree arson.

**AFFIRMED.**